These are consolidated cases and I'm just going to call them by number. 4-12-0768, 4-12-0918, 4-12-1082, and 4-12-1087. For the appellant is Attorney Elitz. I'm going to take the position of the appellant in this case. I'll be dependent on the state agency's decisions. Mr. Young will take the appellant's position, although we're both appellants. There are indeed three cases of which there are three issues. One common to all three cases, a second issue common to two cases, and then a unique issue related to the Evans case. As the court noted, we actually are here with both appellee and appellant, and the counsel and I confirmed it seemed appropriate because the agency decision is really what's at issue here. And I would then proceed to argue as the appellant from the first instance. The three issues, just to state them briefly, are the nature and propriety of the burial contracts. There is an issue about whether or not the Medicaid applicant is entitled to credit for a partial return of a gift or transfer for less than fair market value. And then the third issue is whether or not the correct date for evaluation was used for determination of the penalties applied. To start with the burial contract issue, the question is whether or not an irrevocable burial contract funded by a life insurance policy which had been assigned to a trust is a transfer for fair market value under the law. And I think it's clear there that under the policy manual, the question is whether or not there was, in fact, fair market value received. But in this case, very specifically, the policy manual at PM 07-02-08D addresses prepaid contracts funded by life insurance in which the department's own policy reads, disregard a prepaid burial contract funded by life insurance policy when ownership of the life insurance policy has been irrevocably assigned. With the irrevocable assignment, the ownership of the insurance policy, the asset no longer belongs to the client and therefore is exempt. That is supported also by the reference later on in the manual that says if the total value of the funeral goods and services to be received at the time of death is comparable to the face value of the life insurance policy, fair market value has been received. Mr. Young, your clients didn't enter into a burial contract, did they? No, but they entered into a contract funded by a trust, and that's what we're addressing in the policy. That's specifically allowed not necessarily to contract directly with a funeral home provider, but to enter into an irrevocable trust to fund for the disposition of remains upon the death. But under the terms of the trust, the heirs of your client could take if no bill for the funeral was presented within 45 days. That's true, but under what circumstances could that possibly happen? I mean, the more important point is that this whole method of proceeding is approved by the law, not only in the policy manual, but as we'll address here, by statute. If there's a burial contract. And you conceded, I think in your brief, that there in fact was no contract. There was an estimate of burial services that was provided during the hearing. That's true, and it was shown that it was comparable to the funding of the trust. Let's say your client at death, the children decide, we're not going to bury her, we're going to have a cremation, and a cremation costs $1,000. What was funding the trust was $12,000. So $11,000 is still available and that will pass to the children. Even that is provided for in the statute. The statute we're referring to provides that even, let me find that. Sorry, it's a little bit out of order for me. Even when there's a burial contract, the statute specifically provides that if there's any monies left over, it will go to the heirs. At least that was the law at the time of these contracts. I apologize, that was going to come up a little bit later in my rebuttal. You can look for it when you're waiting to get your rebuttal, Mr. Young. I don't want you to waste your time. Yeah, I'm talking about the state of Illinois refers to the Illinois Burial and Funds Act to attempt to require that there be a burial contract with a funeral provider. Our position is there is no such requirement because under the statute involved, and let me just turn to that. It's under the code, under 305 ILCS 5-3-1-2. It specifically provides that the apartment shall exclude from consideration the value of funeral and burial spaces, grave markers, and other funeral and burial merchandise. Funeral and burial insurance, the proceeds of which can only be used to pay funeral and burial expenses of the insurer to the same extent that such items are excluded from consideration under the Federal Supplemental Income Security Program. We have to then turn to that program and... But you said to the extent they can only be used. That's what the statute reads, correct. But in your cases, if they're not consumed by burial expenses, they can be passed on. And even if there's a burial contract under the law, which... Give me the section that you're talking about if you can. I need to find that. Okay. Under the same act that they use to say there has to be a burial contract, which is the Funeral and Burial Act, or under... When there is a contract with a funeral provider, this is 225 ILCS 45-4-C-5. If after the death of the beneficiary, no funeral merchandise or services are provided, or if the funeral is conducted by another provider, the seller may keep no more than 10% of the payments made under the pre-need contract or $300, whichever sum is less, then most importantly, the remainder of the trust funds or insurance or annuity proceeds shall be forwarded to the legal heirs of the deceased beneficiary. So even the argument is illusory, because even if there's a burial contract by statute that says if there's anything left over under an irrevocable insurance-funded trust, it has to go to the heirs of the deceased. Can you give me that citation? Yeah, 225 ILCS 45-4-C-5. So your point would be that the same thing is going to happen to those dollars, whether there's a specific burial contract or whether there's a trust to provide for funeral expenses? Exactly. If the decedent perhaps just disappeared and there's no burial whatsoever, the outcome is exactly the same? Well, let me ask this to you. I'm confused by some language in the trust agreement. It says the trust agreement required the trustee to pay for funeral and burial expenses. If a bill was presented within 45 days of the decedent's death, and after those 45 days the trustee was prohibited from authorizing any payment of expenses, what's that all about? What is this proviso? What's its purpose and what does it mean? Well, I think the idea is that if somebody dies, 45 days is plenty of time to dispose of the remains. It's to protect the insurance company and the trustee from just having to sit on this forever and ever. It gives them a dispositive provision at the conclusion of the 45 days to make the distribution under the trust agreement and the law. What if somebody died by misadventure and the coroner kept the body and it couldn't be buried until whatever period of time? That could exceed 45 days. What if the funeral home is told by the beneficiaries, don't bill us for 45 days? Well, it seems to me that the... And it agrees, let's assume. If you're talking about a burial contract, this strikes me as we got all kinds of this proviso. It's rather short. A condition, I don't know if it's subsequent or preceded, but we got some condition here that makes this not a total contract, don't we? I don't think so. I mean, we can maybe come up with all kinds of scenarios or something. But if we can come up with a scenario, then it's not a contract. No, the point is that this is an ordinary way of doing business and specifically provided for under the law, including the statute which says use federal SSI program. I'm just concerned about this. You know, the question isn't are burial expense contracts okay? Let's assume for the moment it is. What is this proviso if the bill is presented within 45 days? It seems to me this changes the entire nature of the claim that this is a contract. The beneficiaries could say, you know, we're going to choose you as the funeral home, but you're going to have to trust us and you know who we are, Charlie, yes, Sam, okay, and don't do us for 45 days and they get all this money. But you assume the beneficiaries have that kind of clout as the trustee that has the fiduciary duties to do what they're mandated under the trust agreement. They can't, you know, just act at the behest of beneficiaries. So the trustee does it? The trustee does it, yeah. The trustee says don't do us for 45 days. Well, what would be their motivation to do that? So the money will go to the beneficiaries. Some sort of a conspiracy theory? No, why is this language, that was my first question, why is this language here? What is the purpose of it as a proviso? Why doesn't it just say the trust agreement requires funeral and burial expenses to be paid by the trust? I suppose the trustee wants to put some kind of a termination date in there so that they don't have to just sit on this money forever and administer this trust. It's kind of like if somebody dies, surely 45 days, you know, is ordinarily sufficient. I suppose the parties could agree to pay it out later on if the coroner needs the body or something. But then after those 45 days, the trustee is prohibited from authorizing any payment of expenses. What's that all about? Well, again, I'm sure the trustee is just trying to protect itself, saying we want an end to this. When the decedent dies, that's the purpose of this trust. We want to get the money out of our hands and have it over with. I mean, I can think of no other reason. Go ahead. The Medicaid policy manual refers to four different types of funeral arrangements that are exempt. Actually, the first three that are named are all part of the same one. Well, I'm talking about money in a bank account set aside for funeral and burial expenses, and that would be up to $1,500. You could have it set aside. And the minute you set up a burial plan, you lose that because you've not received it. Irrevocable prepaid burial contract with a funeral home funded by a trust account. But it requires prepaid burial contract with a funeral home. The next one is an irrevocable prepaid burial contract with a funeral home funded by a trust account, or a prepaid burial contract with a funeral home funded by a life insurance policy, which is what you have a life insurance policy at issue here, right? Correct, single premium life insurance policy to fund the trust. But the problem is you don't have the prepaid burial contract with a funeral home. Well, and our argument is that we're not required to have one because the law specifically directs that the department follow the program of the Supplemental Social Security Income Program, which expressly permits this procedure under its act. You've got to point that out to me because I did not see that that was the case. The Federal Supplemental Security Program Policy Manual, the POMS, 01130.425A1, which says a life insurance funded burial contract involves an individual purchasing a life insurance policy on his or her own life, then assigning revocably or irrevocably either the proceeds or ownership of the policy to a third party, generally a funeral provider. Nothing requires that to be a funeral provider. The purpose of the assignment is to fund a burial contract. So this is just the purpose of which is to set it aside for purposes of the final disposition. We move then to the related POM, which specifically addresses the policy for burial trusts. And that is 1120.201 capital H in parentheses. Saying burial trust provisions do not apply where there's an irrevocable burial contract. It says these provisions do not apply to a burial trust where, and this is the first option, is an individual irrevocably contracts with a provider of funeral goods and services for a funeral and the individual funds the contract by prepaying for goods and services and the funeral provider subsequently places the funds in a trust or, option two, the individual establishes an irrevocable trust, naming the funeral provider as beneficiary. And we've got a class of funeral providers who are the beneficiaries of this policy. They're the only beneficiaries. They're the primary beneficiaries of this policy, which has as its only purpose to fund the final burial contract and the disposition of the remains of the decedent. Wait, read that second part where you said or. Or the individual establishes an irrevocable trust, naming the funeral provider as the beneficiary. Naming the funeral provider. Who's the funeral provider that they named in this case? It's the provider who's actually going to provide for the disposition of the decedent's remains. Who did they name? They have to name a funeral provider. Who is the funeral provider in your case that was named? There is an estimate included in each of these contracts from a specific funeral home saying, this is an estimate of what it's going to cost. But there is no contractual provision that the funeral can only be provided for that by that specific funeral provider. All right. It seems to me that's the problem with your setup. Well. Even under the federal law. Let me ask a practical, well, what to me is a practical question. What is the purpose of doing this the way that you have done it as opposed to, or the way it's been done, as opposed to the pre-purchase or pre-paying of a burial contract? Well, there's a number of them. We refer to them in our reply brief to that one. But, you know, one of them is portability. People are living in Illinois. They go to Florida. These contracts need to be portable. And the statute provides that, that if you did enter into a contract with a specific funeral home here and then you wanted to transfer that, you're allowed under the statute to do that, but you've got to leave 10% or $300 with the original provider. So portability is one issue. Another one is there are people who just don't want to go and deal with a funeral home for psychological reasons or whatever. They want to make the arrangements, but they don't want to go down and pick out specific things. That would be another one. And I think we've enumerated some others. But, you know, I guess my question comes down to is, why on earth is the department carrying a brief for funeral homes? That's really what's going on here. They're saying you've got to go to a funeral home to contract for the final disposition of your remains, and if you don't, you're out of luck, you know, as opposed to using this, you know, very common apparatus of using an irrevocable trust funded by a life insurance policy assigned to the trustee on an irrevocable basis. The specific purpose of which is, and in this case, we've got an example. Mrs. Jaden in the record says that's exactly what happened. It was that even the family even ponied up another 70 bucks or something to just finish it out. But the whole purpose of the trust was actually fulfilled. Mr. Greer also died during dependency, but it was not in the record because he died after the fact. But, you know, the plan works perfectly. So, you know, what is the reason why we're saying, you know, we have to favor specific funeral homes to go there? And if you want to end up going there, we cited the recent case of St. Joseph's Abbey. There are lots of constitutional issues why that shouldn't be the case. It's a restraint on trade and all the reasons in there. We cited that case at length in a lot of excerpts from it, but I think it addresses these exact points. But it can't be a restraint of trade if it's a freely chosen funeral home by the… Well, they're saying you can't go outside of the funeral home industry to do it, so that was viewed in the St. Joseph case as a restraint of trade. The state tried to say you've got to buy your casket from a funeral provider, and they said, no, no, no, St. Joseph Abbey… That's a casket. This isn't about caskets. We're talking about a funeral. Well, we're talking about more than caskets. Right. It's goods and services to provide for the final disposition of remains. If you'll have more time, Mr. Young, your time is up for now. Mr. Elitz. Good morning, Your Honors. I'd like to speak up, Counsel. Good morning, Your Honors. Thank you. It's not a microphone. It's just a recording device. Illinois Assistant Attorney General Carl Elitz for the Illinois Department of Health Care and Family Services and the Department of Human Services. I agree with my opponent. We have three distinct issues in this case, even though they're spread over the consolidated appeals. With regard to the issue that seemed to take up most of the morning earlier, that involves all three of our litigants, Evans, Jaden, and Greer. And I think your questions pretty much took the guts out of my argument. I think that the issue there, there must be a contract here, and there must be some sort of burial contract to allow them to set aside $12,000 as they have in each of these cases. Why? Because when our person receives the application and processes it, they have to be able to assess whether there's been a fair market value. And this is a bit of an important point. They concede in their application that they've made a $12,000 transfer. And so at that point, our person who's processing says, this is a transfer. You now have the burden of proof to show that there's been a fair market value transfer here. And at that point, they've produced what they've produced in our appellate record. And they say, well, here, this shows that there's been a fair market value transfer. And our processor says, how do I know that? There's been some discussion here about, you know, this has worked perfectly. It's in the record. It's not in the appellate record. It's not in the administrative record. That all came out in the trial court, I think, that this particular litigant of the three had spent $12,000. But we need our person processing the application to say, yes, I can see a fair market value transfer here. The applicant got $12,000 worth of value. And therefore, it's exempt, and there won't be a penalty for it. But what we have here is something that looks like a contract, a burial contract, but isn't one. And in fact, if it were a burial contract, they would have a whole world of other problems because it is a Class IV felony to sell a burial contract that doesn't comply with the Illinois Act. And they're not really arguing that it does comply with the Illinois Act. They're saying the Act doesn't apply to us. But if you read the Act, it does. They're a seller of a pre-need contract. So it can't not be a contract for purposes of one Illinois law and be a contract for purposes of Medicaid law. What is your thought about the questions I raised to Mr. Young about the proviso on the contract? How do you view that language? Our hearing officer was very careful to not impute ill motive. One of the ways that they could be disqualified is a finding that they did this just to get around the fair market value requirements. And my administrative decision doesn't say that. I think it's there, though, to give the greatest amount of flexibility to the family after the person dies, including the option of not using that money for the person who died, but as a gift to the named beneficiaries. That would trigger a finding that this is not a transfer of fair market value. If that were to happen, what would happen to the deceased's body? I mean, would there be a funeral? The body has to be taken care of somehow. There has to be some way of disposing the body. And our experts suggested in two or three of the cases that cremation is a very common way to dispose of the remains of a deceased person, and that wouldn't come near $12,000. I suppose you could find someone that would pay a lot for it, a little, but it's our view that $12,000 is not fair market value for all ways of disposing of a deceased body. And so our processor can't say that there's fair market value transfer here. It had to be disallowed for that reason. They have the burden of proof. They didn't convince the decision maker, the agency, and that should be the end of it. I also don't take the position, I don't think our agency is taking the position, that the contract has to be with the funeral home. There has to be someone, though, who says, I will promise that this money will be used to bury the applicant or to dispose of the applicant in some way. And that's not true. Doesn't the policy manual, the Medicaid policy manual say it has to be a prepaid burial contract with a funeral home? And that's not required by the federal law. It has to be a funeral provider, not necessarily a funeral home. And maybe I have to back off my prior statement, Your Honor. If our regs require a funeral home, then they do. But maybe I should make the point better by saying, in this case, there's no one standing up and saying, I'll make sure that this money is spent this way. A funeral provider could do it. What I hear Mr. Young talking about is, I'm here on a brief for the funeral industry. I don't see any of that in this case. He made allusions to constitutional issues. None of that is in the administrative record. It's just not part of the record on appeal. The issue is whether the agency reasonably decided that this was not something that guaranteed fair market value. And the fact that there isn't a contract with the funeral provider shows that it's not. That's evidence that tends to show this is not a transfer that complies with the law. And so the decision is one that should be affirmed. How about the other issues? We better get to those. The partial gift issue. The one issue, I'll say in my briefs, in my view, the federal law is crystal clear about this. Mr. Young argues that it's been our best practice to not do it the way the federal law requires it. And we had a case in front of this district a few years back, McDonald talking about state estoppel, and we can't do something wrong and then bind ourselves forever to do it wrong. So that's what his argument is. I think that's a non-starter. In addition, we had witnesses testify that that isn't true. With regard to partial gifts, it's the same idea. He has tendered a case to the court, J. Carl Smith, where a hearing officer says that in the past, the state has allowed partial gift returns to downsize a prior payment. So a person gives money away, then realizes, oh, I'm applying for Medicaid, I need to bring it back into my... to hold that asset back again so that I don't get penalized, and the department has apparently allowed that. But there's nothing in federal law that requires that, at least not with regard to partial returns. The federal law is clear that if it's a full return, it has to be. At the time that this was processed, this application, and we're talking about just the Greer and Jaden cases, when those were processed, Illinois law didn't speak to partial returns. And so the hearing officers here decided that we would not recognize these partial returns. And one of the interesting things about the partial returns in this case is they seem to have been designed entirely to bring the applicant the maximum possible benefit. The returns don't seem like they were returns done in the ordinary course, but done with a view towards the application. And in that case, it's my argument that the court should not require the department to recognize partial returns. There is a situation, and our regs talk about this, where someone may make a sale of an asset for less than its value. And in that case, the transaction would be recognized as a partial return because the reg says that the portion that was for value for the transaction will be recognized. But that's not what happened here. We have money being passed back and forth. The money that was given back to the estate or the applicant was not in any way connected to anything in the real world, like a sale of a house. It was simply done to maximize Medicaid benefits in this case. And so it's my argument that in that particular situation, given that there's no state law requiring the recognition of partial returns at the time this was processed, given that there's no federal law, that the departments are within their discretion to say, no, that's not something we're going to recognize. What would happen after January 1, 2012? After January 1, 2012, Illinois implemented new regulations which apply a whole different scheme to all of the decision-making tree that has to happen with regard to these applicants. The state no longer recognizes partial months, and there is not a month-by-month calculation of the benefit. It's all one big period. So the giving back and forth, like happened here, would not bring any benefit to an applicant. So essentially what the new regs do is move this kind of case with regard to partial give-backs. And I know he says, well, partial give-backs will be recognized going forward. That's true, but to no benefit to an applicant. So we have no incentive to deny a partial give-back because if some money comes back, then the money is available and the department can require the person to spend it down. And the money that's kept out, that doesn't come back, will decrease the look-back. So there's no incentive going forward. That's why I would say that the regs are just not relevant to these cases because this case was all processed before they were passed. So are there no further questions? I'd ask the court to affirm the administrative agencies in each of the cases. Thank you, Mr. Leibovitz. Mr. Young, do you have a rebuttal? I'm going to have to leave my second two issues to the briefs, but I think we've adequately addressed all of those in the briefs. With respect to the argument that this has to be a burial contract, we've got to look at the Illinois Burial and Funds Act. And the act itself states what its purpose is. It is a regulatory act for the furnishing or delivery of personal property, merchandise, or services in connection with the final disposition of dead bodies, and regulating or use or disposition of funds paid on said agreements and providing penalties for the violation thereof. This is administered by the comptroller to regulate funeral providers, crematoria, and cemeteries. And we look further on the act. The act distinguishes. It doesn't talk in terms of prepaid burial contracts. It talks about pre-need contracts, which we suggest, and we've tried to illustrate this visually in our brief. Pre-need contracts are a subset of the whole burial contract notion. The act defines a pre-need contract means any agreement or contract or any series or combination of agreements or contracts, whether funded by trust or life insurance policies, which have for a purpose the furnishing or performance of funeral services or furnishing or delivery of any personal property, merchandise, or services of any nature in connection with the final disposition of a dead body. We're not talking about regulating funeral directors here. They are also defined as providers, meaning persons who are obligated for furnishing or performing funeral services or the furnishing or delivery of any personal property, merchandise, or services of any nature in connection with the final disposition of the body. Again, that act is for the regulation of funeral homes, cemeteries, and crematoria, not where a person, an applicant for medical assistance, is entitled to contract for the final disposition of the remains in an irrevocable position. We can speculate about the 45-day period and its purposes all along, but I think if we had the funeral contractor, the actual burial contractor of the funeral home, we're going to find the same kind of a provision in that contract. That's obviously not before this court, but after 45 days or whatever period of time, the contract has to come to an end. So I don't see that as an important issue, and it certainly shouldn't scuttle the right of the Medicaid applicant under these circumstances to make final provision for the disposition of remains under this sort of provision and to force them to go to a funeral home and to contract specifically for specific goods and services. It's sufficient, I believe, and I would urge this court to hold, that it's sufficient to find and hold that the trust is irrevocable, it has an estimate of what the final goods and services are going to be, and the trustee is duty-bound to pay for those services, and that should be sufficient under the law. I want to ask you one question before you're gone. The Medicaid policy manual is a state document, right? Correct. No, Medicaid... Okay, yes. There is something called a state policy manual, but that's a federal document. Okay, but the Medicaid policy manual. And are you saying, I want to know this question, the answer to this question. Are you saying the Medicaid policy manual is wrong itself or the administrative hearing officer and the agency's interpretation of the policy manual is wrong? I'm saying the interpretation is wrong because the policy manual specifically provides for this sort of an arrangement, and the agency went outside of this and borrowed language from the Burial and Funds Funeral Act in order to say that because you didn't contract with the funeral director, you didn't get fair market value. I'm talking about, now so we're clear, I'm talking about the Medicaid policy manual PM 07-02-08. And that's the one that talks about money in a bank account, the revocable prepaid burial contract with a funeral home. Those four different ways you can set aside and exempt burial funds. Are you saying that policy manual is wrong or the interpretation of the policy manual? To the extent it doesn't incorporate the right of the applicant under the Medicaid, the public aid code to contract for under 305 ILCS 5-3-1.2, which says that the state, a person in need of medical assistance is entitled to follow the federal supplemental security income program and acquire an irrevocable insurance trust funded by life insurance for purposes of making provision for the final disposition of their remains. And that is an exempt asset specifically under the policy manual. I don't understand your answer to her question. She wants to know are you challenging the interpretation or the document? We're challenging the application of the rules that apply. The rules permitted it. Okay. All right. Thank you, counsel. We'll take this matter under advisement and be in recess.